# UNITED STATES DISTRICT COURT
# DISTRICT OF MAINE

| | |
|---|---|
| ALFRED MARCOUX and<br>CHARLENE JONES,<br><br>　　　　Plaintiffs,<br><br>v.<br><br>SUSAN J. SZWED, P.A.,<br><br>　　　　Defendant. | )<br>)<br>)<br>)<br>) Docket No. 2:15-cv-093-NT<br>)<br>)<br>)<br>) |

## DECISION AND ORDER ON CLASS ACTION
## SETTLEMENT AND ATTORNEY FEES

Before me is the Plaintiffs' unopposed motion for final approval of class action settlement and the Plaintiffs' unopposed motion for attorney fees and reimbursement of litigation expenses. This action involves a standardized initial debt collection letter sent to consumers by Susan J. Szwed, P.A. The Plaintiffs, Alfred Marcoux and Charlene Jones, allege those letters violated the Fair Debt Collection Practices Act ("**FDCPA**"), 15 U.S.C. §§ 1692 *et seq.*, by failing to properly notify Maine consumers of how they could dispute the validity of the debts they were alleged to owe and how they could obtain from the Defendant verification of the legitimacy of those debts. The parties have come to an agreement to settle the case.

Notice of the settlement has been successful, reaching 88 of the 89 consumers in the class. As part of the settlement, the Defendant has agreed to no longer use the form initial debt collection letter that was sent to class members. Class members will receive a modest recovery under the settlement. The proposed incentive payments for the two named Plaintiffs, the costs of notice and administration of the class

settlement, and attorney fees and expenses will be paid separately from the class settlement fund.

After conducting a fairness hearing on January 27, 2017, as Federal Rule of Civil Procedure 23(e) requires, I conclude that the settlement is fair, reasonable, and adequate and that the incentive awards and attorney fees and expenses are reasonable.

## CLASS ACTION SETTLEMENT

### I.   Settlement Class Certification

The analysis of these factors in my October 3, 2016, Order of Preliminary Certification applies here equally. *Marcoux v. Szwed*, No. 2:15-CV-093-NT, 2016 WL 5720713 (D. Me. Oct. 3, 2016). No more need be said. I conclude, therefore, that certification of the proposed class is appropriate.

### II.  Settlement and Plan of Distribution

A proposed settlement is subject to the following procedure:

(1) The court must direct notice in a reasonable manner to all class members who would be bound by the proposal.
(2) If the proposal would bind class members, the court may approve it only after a hearing and on finding that it is fair reasonable, and adequate.
(3) The parties seeking approval must file a statement identifying any agreement made in connection with the proposal.
(4) If the class action was previously certified under rule 23(b)(3), the court may refuse to approve a settlement unless it affords a new opportunity to request exclusion to individual class members who had an earlier opportunity to request exclusion but did not do so.
(5) Any class member may object to the proposal if it requires court approval under this subdivision (e); the objection may be withdrawn only with the court's approval.

Fed. R. Civ. P. 23(e). Here, class members have received individual notice of the settlement; there has been a hearing; there are no side agreements; no class members filed written objections; no class members appeared at the hearing. What remains, then, is for me to determine whether the settlement is "fair, reasonable, and adequate."

I consider the following factors to assess a class settlement: (1) comparison of the proposed settlement with the likely result of litigation; (2) stage of the litigation and the amount of discovery completed; (3) reaction of the class to the settlement; (4) quality of counsel; (5) conduct of the negotiations; and (6) prospects of the case, including risk, complexity, expense and duration. *In re New Motor Vehicles Canadian Export Antitrust Litigation*, 2011 WL 1398485, *2 & n.16 (D. Me. April 13, 2011) (citing additional sources).

### A. Proposed Settlement Compared to Likely Trial Outcome

The gravamen of the Complaint was that the Defendant's form letter, which advised recipients that the Defendant had been retained to collect debts owed to Bank of America, misstated the rights afforded under the FDCPA. Specifically, the letters did not inform the recipients that the Defendant "need only have mailed verification of the debt, or a copy of the judgment, to them if they requested, *in writing*, that Defendant do so." Compl. ¶ 25. The Defendant's letter stated:

> If you notify this firm within thirty (30) days after your receipt of this letter, that the debt or any portion thereof, is disputed, we will obtain verification of the debt or a copy of the judgment, if any, and mail a copy of such verification or judgment to you. Upon your written request within the same thirty (30) day period mentioned above, we will provide you with the name and address of the original creditor, if different from the current creditor.

3

Compl. ¶¶ 19 & 22. Because the Defendant was not required to mail verification of the debt or a copy of the judgment upon an oral request, the Plaintiffs alleged that the letter violated the FDCPA. Compl. ¶¶ 26 & 28.

The Defendant settled the lawsuit before trial for a total of $3,800 in damages. Settlement Agreement ¶ 10(A). Comparing the benefits obtained to the likely results of the litigation, the monetary relief afforded to the class members is approximately 77% of the maximum allowed by statute. The FDCPA limits statutory damages for the class members to the lesser of $500,000.00 or 1% of defendant's net worth. *See* 15 U.S.C. § 1682k(a)(2)(B). The parties in this case agreed that the lesser is 1% of the Defendant's net worth. Although the parties apparently disagree about the proper way to calculate net worth, the Defendant has agreed to pay the class $3,800—approximately 77% of the maximum statutory damages under the FDCPA. *Sanders v. Jackson*, 209 F.3d 998, 1004 (7th Cir. 2000) ("net worth" within meaning of § 1692k means "balance sheet or book value net worth" of assets minus liabilities). The Defendant will separately provide full statutory damages of $1,000.00 each to Mr. Marcoux and Ms. Jones.

The class' recovery here is reasonable for three reasons. First, there was no assurance of success on the merits. Although I sustained the Plaintiffs' class claims at the motion to dismiss stage, the Plaintiffs faced additional obstacles before securing judgment in the class' favor. The Defendant asserted five affirmative defenses here, including that its actions in preparing and distributing the challenged collection letters were taken in good faith and that any violation of the FDCPA was

unintentional and a result of a bona fide error notwithstanding the Defendant's maintenance of procedures reasonably adapted to avoid such error. Answer 9 (ECF No. 7). This "bona fide error" defense, if accepted, would have provided a complete defense to liability.

Second, assuming liability could be established, the guaranteed recovery provided by the settlement is reasonable considering that the FDCPA's damages provision is not mandatory. Had the Plaintiffs not settled the case and prevailed at trial, there was still no assurance they would recover full statutory damages of $1,000 for each of the named Plaintiffs, plus 1% of the Defendant's net worth for the class. The statute merely provides for awards up to certain amounts, after balancing such factors as the nature of the debt collector's noncompliance, the number of persons adversely affected, and the extent to which the debt collector's noncompliance was intentional. 15 U.S.C. § 1692k(b)(2).

Finally, the settlement provides a prospective public benefit in that the Defendant agreed to change the form of its initial debt collection letter. It is not clear that this benefit would have been available at trial because courts disagree on whether the FDCPA allows such injunctive relief. *See, e.g.*, *Midland Funding LLC v. Brent*, 644 F. Supp. 2d 961, 977 (N.D. Ohio 2009) ("This Court agrees that declaratory and injunctive relief are not appropriate under the FDCPA."). In sum, evaluating the benefits obtained here to those likely at trial demonstrates the fairness and reasonableness of the negotiated resolution.

### B.       Stage of Litigation

Also significant is the amount of work completed prior to settlement. Given the months of contested litigation and discovery efforts that preceded negotiations, the settlement here was achieved with a clear view as to the strengths and weaknesses of the case. The parties exchanged discovery concerning the Defendant's net worth, class damages, and the class size, so the Plaintiffs could adequately assess the class's maximum potential statutory damages recovery at trial. The issues that remained for determination were the propriety of class certification and the legality of the form letters at issue.

The parties' briefing on Defendant's motion to dismiss provided much insight on those purely legal issues. *See* ECF Nos. 6, 8, 10, 12-13. Both sides could assess the relative strengths and weaknesses of their respective positions at the time they reached agreement. Therefore, both counsel and this Court are adequately informed to evaluate the fairness of the settlement presented. At bottom, the Plaintiffs and their counsel submit that the value of the class' recovery here, reflects their confidence in the claims at hand based on the litigation to date.

### C.    Class Reaction

The reaction of the class strongly favors approval of the settlement. After a successful direct mail notice program, not one class member lodged an objection to the settlement terms or requested to be excluded. Some courts have recognized that the "practical realities" of consumers contesting class action settlements may mean that silence does not equate to support. Nonetheless, the complete absence of objections or exclusions here supports approval. *See In re TRS Recovery Servs., Inc.*

*and Telecheck Servs., Inc., Fair Debt Collection Practices Act (FDCPA) Litig.*, No. 13-MD-2426, 2016 WL 543137, at *7 (D. Me. Feb. 10, 2016) (citing cases). Accordingly, the class' implicit support weighs in favor of the fairness and reasonableness of the settlement terms.

### D. Conduct of Negotiations and Quality of Counsel

The parties' arm's-length settlement negotiations demonstrate the fairness of the settlement and that it was not a product of collusion or fraud among the parties. Indeed, this litigation had been pending for over a year before settlement was reached. During that time, the parties fully briefed the Defendant's motion to dismiss. It was only after those dismissal efforts proved unsuccessful that the parties engaged in any serious settlement discussions.

Counsel for both sides then zealously negotiated on behalf of their clients and exchanged numerous settlement demands and counteroffers. The negotiations included multiple telephone conferences among counsel to work through differences of opinion regarding the value of the Plaintiffs' and the class' claims. The result was a compromise of the claims that took into account the risks of establishing liability and the statutory limitations on damages.

Both the conduct of the negotiations and the quality of counsel support final approval of the class settlement

### E. Case Prospects, Including Risk, Complexity, Expense, and Duration

This action was not without risk. Every class action involves some level of uncertainty, and here, the parties disagree about the merits of Plaintiffs' claims,

7

whether a class would be certified, and the ultimate outcome of this litigation. And given that disagreement, absent settlement, this litigation would likely take many more months to proceed through contested class certification, summary judgment and, if necessary, trial and appeals.

Liability under the FDCPA was not guaranteed, nor were statutory damages, even assuming liability. Thus, the immediate relief proposed of more than $42 per class member is preferable to the uncertainties of continued, protracted litigation. *See id*. at 683 ("Because damages are not mandatory, continued litigation presents a risk to Plaintiffs of expending time and money on this case with the possibility of no recovery at all for the Class. In light of the risks and costs of continued litigation, the immediate reward to Class Members is preferable."). Accordingly, this factor also supports final approval.

### F. Reasonableness of Settlement

After considering all these factors, I conclude that the proposed settlement is fair, reasonable and adequate.  The assured compensation now is a fair trade-off for the uncertainties of trial and appeal and the accompanying delay in receiving any damages. I also find that the plan of distribution to give each class member who received the letter the same damage award is fair, reasonable and adequate.

## III. Attorney Fees

The Plaintiffs seek attorney fees, apart from the settlement fund, in line with the settlement agreement. Settlement Agreement 9-10 (ECF No. 26-1). Rule 23(h) provides that a court may award reasonable attorney fees and costs. Class members or a party may object to an attorney fees request, a court may hold a hearing, and

that a court "must find the facts and state its legal conclusions under Rule 52(a)." Fed. R. Civ. P. 23(h).

The Plaintiffs' attorneys have requested a total attorney fee and costs award of $53,000, which is fourteen times of the amount the Defendant is paying to settle the case. Pls.' Mot. for Approval of an Award of Attorneys' Fees and Reimbursement of Litigation Expenses 1-3 (ECF No. 31). The notice sent to the class members states that the Plaintiffs' attorneys will seek fees of no more than $70,000 and litigation expenses of no more than $2,500. Notice (ECF No. 37-4). I heard the motion at the final fairness hearing on January 27, 2017, and neither the Defendant or class members objected to the attorney fees request. I note that had this lawsuit proceeded to a successful judgment for the Plaintiffs, they could have recovered from the Defendant reasonable attorney fees and costs under the FDCPA, 15 U.S.C. § 1692k, on top of any damages they received. I proceed to the findings of fact and conclusions of law on whether the request is reasonable under the lodestar method.

### A. Reasonable Hourly Rate

The Plaintiffs' attorneys seeks a rate of $350 per hour for the work of Jessie Johnson and a rate of $400 per hour for Michael Greenwald, James Davidson, and Aaron Radbil. In substantiating the reasonableness of their hourly rates, the attorneys have submitted affidavits detailing their experience in consumer protection litigation. Aff. of Jessie Johnson (ECF No. 31-1); Aff. of Michael Greenwald (ECF No. 37-1); Aff. of James Davidson (ECF No. 37-2); Aff. of Aaron Radbil (ECF No. 37-3). The attorneys' affidavits also detail their experience in FDCPA class actions.

### B. Hours reasonably expended

The next step in calculating a lodestar figure is determining the number of hours reasonably expended in pursuit of the judgment. Attorney Johnson seeks payment for 124.2 hours of work. Attorney Radbil seeks payment for 24.3 hours of work. Attorney Davidson seeks payment for 11.8 hours of work. Attorney Greenwald seeks payment for 9 hours of work. In addition, after filing the motion for attorney fees, Attorney Johnson estimated that he would spend another 20 hours working on the case. Thus, the total amount of lodestar fees is $68,510. The Plaintiffs' attorneys have applied a 22% discount to their fee request, asking me to approve their $53,000 fee request. I have reviewed the attorneys' time sheets and find that the attorney fees request is reasonable in this case.

## IV. Incentive Awards

A named plaintiff is a necessary component of any class action, and thus, an incentive or service award may be appropriate to induce an individual to take part in the suit. *See Scovil*, 2014 WL 1057079 at *6 (citing *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998)). The FDCPA provides for statutory damages for each named plaintiff of no more than $1,000. 15 U.S.C. § 1692k(a)(2)(B). In determining whether an incentive award is called for, courts consider the actions that the named plaintiffs have taken to protect the interests of the class, the amount of time and effort they have expended in pursing the litigation, the degree to which the class has benefited from the named plaintiffs' efforts, and any negative effects they have risked. *Scovil*, 2014 WL 1057079, at *6.

The settlement agreement here proposes a $1,000 fee award for Alfred Marcoux and Charlene Jones, which is separate and apart from the settlement fund. No class member objected to the awards. Although it does not appear that they risked any negative consequences, the named Plaintiffs in this case assisted with drafting the Complaint and stayed in touch with Plaintiffs' counsel throughout the litigation. I conclude that the awards are reasonable given the named Plaintiffs' time and energy commitment.

## CONCLUSION

There is no reasonable basis to believe that the Plaintiff class could achieve a higher settlement amount, and there are significant risks posed by continued litigation, including risks posed by summary judgment. I therefore finally **CERTIFY** the class, and **APPROVE** the settlement agreement and plan of distribution, including the incentive awards to the two named Plaintiffs. I also **APPROVE** the requested attorney fees.

SO ORDERED.

/s/ Nancy Torresen  
United States Chief District Judge

Dated this 21st day of February, 2017.